UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FIELDWOOD ENERGY OFFSHORE LLC, | § | |
| FIELDWOOD ENERGY LLC, | § | |
| -and- | § | |
| CASTEX OFFSHORE INC., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 4:18-CV-03218 |
| PRIME OFFSHORE LLC, | § | |
| SUMITOMO CORPORATION | § | |
| OF AMERICAS, | § | |
| SUMITOMO CORPORATION, | § | |
| -and- | § | |
| SUMMIT SHALE INTERNATIONAL | § | JURY TRIAL DEMANDED |
| CORPORATION, | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFFS' MOTION TO APPLY LOUISIANA LAW UNDER OCSLA

TO THE HONORABLE JUDGE PETER BRAY:

Fieldwood Energy Offshore LLC, Fieldwood Energy LLC, and Castex Offshore Inc. (collectively, "Plaintiffs") request that this Court determine that Louisiana state law is applicable to any issues governed by state law under the Outer Continental Shelf Lands Act ("OCSLA"). Under OCSLA, federal law generally applies to issues related to offshore assets. But where state law must be borrowed

1

as surrogate federal law under OCSLA, courts apply the laws of the adjacent state. In this case, Louisiana is the adjacent state; accordingly, Plaintiffs request that Louisiana state law be determined as the governing "gap filler" under OCSLA.

## BACKGROUND

This case concerns a dispute over decommissioning, plugging, and abandonment costs associated with oil and gas facilities at Breton Sound Area, Block 41, Lease OCS-G 21142 (the "Lease"). Prime Offshore LLC ("Prime") and Summit Gulf Venture ("SGV") at one point held interests in the Lease; Sumitomo Corporation of Americas ("SCOA"), Sumitomo Corporation ("SC"), and Summit Shale International Corporation ("SUSHI," formerly Petro Summit Investment USA Corporation or "PSIUSA") are parent companies of SGV, which sold the asset to Tammany and has since been dissolved. PSIUSA and SCOA were authorized to hold mineral leases and/or rights-of-way on the Outer Continental Shelf, and PSIUSA was empowered by SGV (in any matter relating to Federal lands or minerals) to agree upon the terms of and execute agreements regarding SGV's oil and gas leases—such as the one at issue here on the OCS. **Exhibit A**.

The claims at issue are breach of contract; unjust enrichment and equitable subrogation; quantum meruit; alter ego/corporate fiction/piercing the corporate veil; and requests for declaratory judgment regarding the Defendants' liability for current and future plugging, abandonment, and decommissioning costs. The assets at Breton

2

Sound Block 41 are covered by an Offshore Operating Agreement (the "OOA"), dated effective January 1, 2002. **Exhibit B.**

OCSLA contains a Congressionally mandated choice-of-law provision. No party has contended OCSLA is inapplicable to this dispute—in fact, the initial removal by Sumitomo Corporation of Americas ("SCOA") cited OCSLA as the grounds for removal and for this Court's jurisdiction. (Def.'s Notice of Removal of Civil Action ¶ 6–9, ECF No. 1.) Because OCSLA uses state law as a gap-filler, and because the elements for some of the above claims differ state to state, the parties will be afforded more certainty in trial preparation and may streamline their motions to this Court if the battle over applicable law ends sooner rather than later. To that end, Plaintiffs request that the Court determine Louisiana law to be applicable to all causes of action.

## ARGUMENT

Choice-of-law analysis under OCSLA is a multi-step task. First, OCSLA must apply and grant jurisdiction over the claims at hand. Second, courts must determine whether—under OCSLA—federal law, maritime law, or the law of the adjacent state applies to the case. If the law of the adjacent state applies, a third step is required: the identification of the appropriate state.

43 U.S.C. § 1349(b)(1) gives district courts original jurisdiction over cases and controversies arising out of or in connection with operations conducted on the

Outer Continental Shelf (the "OCS").  Claims regarding plugging, abandonment, and decommissioning expenses related to offshore oil and gas facilities fall under OCSLA's grant of jurisdiction. *Total E&P USA, Inc. v. Marubeni Oil & Gas (USA), Inc.*, No. H-16-2674, 2017 WL 5127212, at *2 (S.D. Tex. Sept. 11, 2017) (Hittner, J.).  OCSLA grants jurisdiction here.

This broad grant of jurisdiction is separate from the second step: OCSLA's choice-of-law analysis.  Federal law governs actions under OCSLA *except* when the controversy satisfies a three-part test—if the test is satisfied, OCSLA borrows the substantive law of the "adjacent state" as surrogate federal law.  *Union Tex. Petroleum Corp. v. PLT Eng'g, Inc.*, 895 F.2d 1043, 1050 (5th Cir. 1990).  The test is satisfied where: (a) the controversy arises on a situs covered by OCSLA; (b) federal maritime law cannot apply of its own force; and (c) the state law must not be inconsistent with federal law. *Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 787 (5th Cir. 2009).  This case meets all three elements, as have similar cases before it. *See GOM Shelf, LLC v. Sun Operating Ltd. P'ship*, No. 4:06-CV-3444, 2008 WL 901482, at *7–8 (S.D. Tex. Mar. 31, 2008) (claims inextricably linked to plugging and abandoning a well in the OCS arose from an OCSLA situs; maritime law did not extend to dispute arising out of lease, assignments, and JOA with respect to plugging and abandonment); *PLT Eng'g, Inc.*, 895 F.2d at 1047 (Louisiana law was not inconsistent with federal law in OCSLA analysis).  The

*GOM Shelf* case, notably, held that this second step was satisfied where—like here—an operator sued assignors for an insolvent assignee's proportionate share of decommissioning costs. *GOM Shelf*, 2008 WL 901482, at *8. Therefore, the claims in this case must be assessed through the lens of the appropriate state's law.

The third and final step is to determine which state's law applies. In this case, the answer is Louisiana.

## I.     The Adjacent-State Test Requires Application of Louisiana Law.

Under OCSLA, the "adjacent state" is the state housing the subsoil, seabed, or structure in question if the state's boundaries were drawn seaward to the outer margin of the OCS. 43 U.S.C. § 1333(a)(2)(A). Courts consider four factors when identifying the adjacent state: (a) geographic proximity; (b) which coast federal agencies consider the platform to be "off of"; (c) prior court determinations; and (d) projected boundaries. *Tana Expl. Co. LLC v. Implicit Oil & Gas, L.P.*, No. H-13-334, 2015 WL 13697932, at *2 (S.D. Tex. Mar. 30, 2015) (Hittner, J.) (citing *Snyder Oil Corp. v. Samedan Oil Corp.*, 208 F.3d 521, 524 (5th Cir. 2000)).

### A. The Assets Have Geographical Proximity to Louisiana.

The wells at issue have closest geographic proximity to Louisiana—the Breton Sound Area is part of the Louisiana coastline. The U.S. Department of the Interior Minerals Management Service ("MMS") is the predecessor to the Bureau of Ocean Energy Management ("BOEM") and the Bureau of Safety and Environmental

5

Enforcement ("BSEE").  Per MMS environmental documents, lease blocks in the Breton Sound Area are approximately "10 miles from the nearest Louisiana shoreline."  *See* **Exhibit C**, 73 Fed. Reg. 76052 (December 15, 2008).  No MMS documents found thus far refer to any other state's coast when referring to the location of the Breton Sound Area.

Additionally, MMS and BOEM have released and continue to release informative maps of the Breton Sound Area that place the area and its lease blocks geographically nearest Louisiana.  The following image is of an MMS map titled "Louisiana Gulf Coast Index"; it points out the Breton Sound Area by its MMS-given code: <u>LA10B</u>.



**Exhibit D**, *U.S. Department of the Interior Minerals Management Service—Breton Sound Area* (highlighting added).

### B.  The Assets Are Considered "Off of" the Coast of Louisiana.

The OOA has some relevance in the choice-of-law analysis, though not through its choice-of-law provision.  Critically, parties cannot contract around OCSLA, so any state-law-selecting language in a contract is not useful.  *See Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 482 n.8 ("OCLSA does supersede the normal choice-of-law rules that the forum would apply."); *see also Petrobras Am., Inc. v. Vicinay Cadenas, S.A.*, 815 F.3d 211, 215 (5th Cir. 2016) ("Because

OSCLA's choice of law scheme is prescribed by Congress, parties may not voluntarily contract around Congress's mandate."); *PLT Eng'g, Inc.*, 895 F.2d at 1050 ("We find it beyond any doubt that OCSLA is itself a Congressionally mandated choice of law provision requiring that the substantive law of the adjacent state is to apply even in the presence of a choice of law provision in the contract to the contrary.").  But the OOA sheds a measure of light on the geographical location of the assets, thereby supporting the use of Louisiana law:



**Exhibit B** at 1 (highlighting added).

As in the MMS map *supra*, BOEM's protraction diagrams of the Gulf of Mexico still give the lease block the same Louisiana-coded protraction number: <u>LA</u>10B.  **Exhibit E**.  The BOEM's map of administrative boundaries, derived through the updated National Baseline and Supreme Court fixed baselines, where

applicable, shows by its red lines that the offshore administrative boundary of Louisiana is well beyond where the Breton Sound Area is located.



**Exhibit F** (full map attached), *BOEM Gulf of Mexico Federal OCS Administrative Boundaries.  Compare with* excerpt from **Exhibit D** (highlighting added):



In sum, the agencies that exist to map, lease, and plan in the Gulf of Mexico identify the relevant location as a Louisiana-adjacent lease block.

Further, the State of Louisiana's Department of Environmental Quality includes the Breton Sound Area in its maps of Louisiana's Coastal Boundaries and Maritime Limits. **Exhibit G**. This comes as no surprise, as Louisiana courts identify the same field location holding the lease blocks as "an area of water located off the south east coast of Louisiana." *See, e.g.*, *In re Complaint of Supreme Towing Co., Inc.*, No. 07-9231, 2010 WL 11561150, at *1 (E.D. La. Aug. 12, 2010). The State of Louisiana recognizes the Breton Sound Area's location. Federal agencies recognize the Breton Sound Area's location. The OOA recognizes the Breton Sound Area's location. Unwaveringly, all conclude it is off the coast of Louisiana.

### C. Prior Court Determinations Support the Use of Louisiana Law.

It appears that this particular block has never been the subject of an adjacent-state analysis. However, Judge Hittner recently agreed with parties who identified Louisiana as the adjacent state in litigation involving a well located close by the ones at issue here. *Tana Expl. Co. LLC v. Implicit Oil & Gas, L.P.*, No. H-13-334, 2015 WL 13697932, at *1 (S.D. Tex. Mar. 30, 2015) (Hittner, J.) (finding Louisiana to be the adjacent state with respect to a well in Main Pass 207). The Main Pass 207 block is in an area designated by the MMS as LA10A—the LA10A location is visible in **Exhibit D** as just east of where the MMS points out the Breton Sound Area

10

(LA10B).  The Main Pass blocks are even further from the Louisiana coast than the Breton Sound Area blocks are—there is no other realistic option for an adjacent state determination in this matter.

### D. No Additional Projected Boundaries Have Been Found.

Plaintiffs are aware of no other boundary determinations or official projections relevant to the assets other than the agency information and protraction maps provided.  All information points to Louisiana.

As all four adjacent-state test factors identify Louisiana as the relevant adjacent state, Louisiana state law should apply to the claims in this case, pursuant to OCSLA's choice-of-law provision.

### II.    Louisiana Law Applies to All Claims in the Suit.

Louisiana state law applies with equal force to all claims in this suit, as all claims arise from the same issue: the nonpayment of plugging, abandonment, and decommissioning costs.  But for those costs, no portion of this lawsuit would exist— the breach of contract claim, unjust enrichment claim, quantum meruit claim, alter ego claim, and requests for declaratory judgment are inextricably intertwined.  All claims arose together from the same controversy on the OCS; OCSLA and all its choice-of-law ramifications control the full scope of the claims.  *See W & T Offshore, Inc. v. Apache Corp.*, 918 F. Supp. 2d 601, 614 (S.D. Tex. 2013) ("The [OCSLA] situs requirement is satisfied where, as here, the *controversy* arises on the OCS.  In

11

sum, Louisiana law applies as federal law to [plaintiff's] claims, whether they are framed as tort or contract claims.") (internal citations omitted) (emphasis in original).  The OCSLA-situs portion of the jurisdictional test—the most commonly debated of the three—neatly encompasses all of Plaintiffs' claims:

> Accordingly, here, the Court finds that the complaint in the instant case arises on an OCSLA situs because Plaintiff's claims are "inextricably linked" to plugging and abandoning the well on Block A-16 in the Outer Continental Shelf. Furthermore, Plaintiff's claims would not have arisen but for the fact that this well existed.

*GOM Shelf*, 2008 WL 901482, at *8.  None of Plaintiffs' claims in this case arise from a controversy other than the P&A of offshore wells.  OCSLA grants proper jurisdiction over all the causes of action.

That common source between claims dictates that Louisiana state law be applied across the board, not merely to one or two of the issues.  *Apache*, 918 F. Supp at 614 (applying Louisiana law to breach of contract, conversion, negligent misrepresentation, gross negligence, fraud, and estoppel claims arising from the same controversy).  This Court in *Tana Exploration Company* found the plaintiff's alter ego claims were intertwined with its breach of contract claim, as here.  *Tana Expl. Co.*, 2015 WL 13697932, at *2 (Hittner, J.).  The parties had already agreed that the plaintiff's breach of contract and fraud claims were subject to OCSLA's choice-of-law provision.  *Id.*  The defendants argued that the laws of the parties' respective states of incorporation (Texas and Delaware) would apply, but the Court

disagreed.  *Id.*  Because the alter ego claim was a major aspect of the other claims, the claims were "intertwined" and "Louisiana law applies to Tana's alter ego claim pursuant to the OCSLA choice-of-law provision." *Id.*  The same is true in this case— Plaintiffs have pled causes of action that all stem from the same controversy.  The causes of action all relate to the failure to pay P&A expenses associated with the offshore Lease (and in the case of the Sumitomo Defendants, the additional act of to dissolving their subsidiary without making allowances for those OCS decommissioning obligations).

OCSLA applies to all claims arising from the present controversy on the OCS; therefore, Louisiana state law, as the state adjacent to the OCS Lease at the center of this case, should be applied pursuant to the statute.

## CONCLUSION

Plaintiffs request the Court determine that, under OCSLA's jurisdictional grant and choice-of-law analysis, Louisiana state law applies to the claims at issue in this dispute.

Respectfully submitted,

BECK │ REDDEN LLP

By: */s/ Geoff A. Gannaway*
      Geoff A. Gannaway
      Texas State Bar No. 24036617
      Federal I.D. No. 37039
      ggannaway@beckredden.com

1221 McKinney St., Suite 4500
Houston, Texas  77010-2010
Telephone:  (713) 951-3700
Facsimile:  (713) 951-3720

**ATTORNEY-IN-CHARGE FOR
PLAINTIFFS FIELDWOOD ENERGY
OFFSHORE LLC,
FIELDWOOD ENERGY LLC, AND
CASTEX OFFSHORE INC.**

Alex B. Roberts
Texas State Bar No. 24056216
Hannah L. Roblyer
Texas State Bar No. 24106356
Beck Redden LLP
1221 McKinney, Suite 4500
Houston, Texas  77010-2010
Telephone:  (713) 951-3700
Facsimile:  (713) 951-3720

**OF COUNSEL FOR PLAINTIFFS
FIELDWOOD ENERGY OFFSHORE LLC,
FIELDWOOD ENERGY LLC, AND
CASTEX OFFSHORE INC.**

## CERTIFICATE OF CONFERENCE

I hereby certify that I conferred by e-mail with opposing counsel on this 13th day of September 2019, and counsel is opposed to the relief requested.

*/s/ Hannah L. Roblyer*

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing instrument to be served on the following counsel of record in accordance with the Federal Rules of Civil Procedure on this 13th day of September 2019, by electronic mail:

Counsel for Defendant
Prime Offshore LLC:
Larry R. Veselka
lveselka@skv.com
Austin R. Kreitz
akreitz@skv.com
Smyser Kaplan & Veselka, L.L.P.
700 Louisiana, Suite 2300
Houston, Texas 77002

Counsel for Defendants
Sumitomo Corporation of Americas and
Summit Shale International Corporation:
Michael D. Morfey
michaelmorfey@HuntonAK.com
M. Kaylan Dunn
kaylandunn@HuntonAK.com
Hunton Andrews Kurth LLP
600 Travis, Suite 4200
Houston, Texas  77002

*/s/ Geoff A. Gannaway*