## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **FIELDWOOD ENERGY OFFSHORE LLC, et al.,** | § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | **Civil Action No. 4:18-cv-03218** |
| **PRIME OFFSHORE LLC, et al.** | § § § | |
| *Defendants.* | § § | |

---

## DEFENDANTS SUMITOMO CORPORATION OF AMERICAS AND SUMMIT SHALE INTERNATIONAL CORPORATION'S RESPONSE TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING DECOMMISSIONING OBLIGATIONS

---

Michael D. Morfey
Attorney-in-Charge
State Bar No. 24007704
Federal I.D. No. 23842
*michaelmorfey@HuntonAK.com*
HUNTON ANDREWS KURTH LLP
600 Travis, Suite 4200
Houston, Texas 77002
(713) 220-4163
(713) 220-4285 (Fax)

OF COUNSEL:
M. Kaylan Dunn
State Bar No. 24076359
Federal I.D. No. 1171046
*kaylandunn@HuntonAK.com*
HUNTON ANDREWS KURTH LLP
600 Travis, Suite 4200
Houston, Texas 77002
(713) 220-4127
(713) 220-4285 (Fax)

ATTORNEYS FOR DEFENDANTS SUMITOMO CORPORATION OF AMERICAS AND SUMMIT SHALE INTERNATIONAL CORPORATION, FORMERLY PETRO SUMMIT INVESTMENT USA CORPORATION

# TABLE OF CONTENTS

SUMMARY ............................................................................................................ 1

BACKGROUND ................................................................................................... 2

ARGUMENTS AND AUTHORITIES ................................................................. 3

      A.     Plaintiffs fail to establish any basis to hold SCOA and PSIUSA responsible under the Lease or Offshore Operating Agreement ................................................................. 3

      B.     SGV is not liable for the P&A under the Lease or Offshore Operating Agreement ........................................................ 5

CONCLUSION ................................................................................................... 10

EMF_US 76536166v1

Defendants Sumitomo Corporation of Americas ("SCOA") and Summit Shale International Corporation, formerly Petro Summit Investment USA Corporation ("PSIUSA"), file this response to Plaintiffs' motion for partial summary judgment regarding continuing decommissioning obligations (the "Motion"), and respectfully show as follows:

## SUMMARY

This case concerns an oil and gas lease at Breton Sound Block 41 (the "Lease") in federal waters off the coast of Louisiana. Ownership interests in the Lease are governed by an Offshore Operating Agreement. In relevant part, Plaintiffs move for judgment that SCOA and PSIUSA owe continuing obligations under the Lease and Offshore Operating Agreement to pay plugging, abandonment, and decommissioning ("P&A") expenses. However, SCOA and PSIUSA are ***not parties*** to the Offshore Operating Agreement or the Lease—as Plaintiffs admit in the Motion. As such, SCOA and PSIUSA are not liable for the P&A expenses as a matter of law.

Plaintiffs cursorily assert in a single sentence in the Motion that SCOA and PSIUSA "are responsible for the liabilities" of Summit Gulf Venture, LLC ("SGV"), a Delaware company that held an interest in the Lease from 2005 through 2008. Plaintiffs have not named SGV as a defendant in this lawsuit, and provide no authority for adjudicating its alleged liability in its absence. Moreover, Plaintiffs do not argue in the Motion—much less establish—any basis for holding SCOA and PSIUSA responsible for SGV's alleged liability to pay P&A expenses. Plaintiffs' motion for partial summary judgment against SCOA and PSIUSA must therefore be denied.

## BACKGROUND

SGV was formed as a Delaware limited liability company ("LLC") for the purpose of exploration and production of oil and natural gas in the Gulf of Mexico.[1] SCOA and PSIUSA (the "SGV Members") held 30% and 70% membership interests in SGV, respectively.[2] Both SCOA and PSIUSA are direct subsidiaries of Defendant Sumitomo Corporation, a Japanese corporation.

As Plaintiffs allege in the Motion, "[t]hrough a series of assignments and transactions, Summit Gulf Venture, LLC ('SGV') and Prime Offshore, LLC ('Prime') obtained interests in [the Lease]."[3] As to SGV in particular, it is undisputed from 2005 through 2008 SGV held record title to and a 35% operating interest in the Lease.[4] Plaintiffs further allege in the Motion that, "[t]hrough a series of assignments, Plaintiffs, Prime, and SGV all became parties to [the] Offshore Operating Agreement," which "governs their ownership interests in the Lease."[5] However, Plaintiffs notably do *not* allege that SCOA or PSIUSA obtained interests in the Lease or were parties to the Offshore Operating Agreement.

SGV sold all of its interest in the Lease to Tammany Oil & Gas LLC ("Tammany") in 2008, and formally dissolved in accordance with Delaware law in

---

[1]   *See* SCOA's and PSIUSA's Mot. for Summary Judgm't (Doc. No. 56) at 2.

[2]   *Id.* at 2–3.

[3]   Plaintiffs' Motion for Partial Summary Judgm't Regarding Continuing Decommissioning Obligations ("Plaintiffs' Decommissioning MPSJ") (Doc. No. 57) at 2; *see id.* at 3 (identifying SGV and Prime as "prior interest holders").

[4]   SCOA's and PSIUSA's Mot. for Summary Judgm't (Doc. No. 56) at 2–3.

[5]   Plaintiffs' Decommissioning MPSJ (Doc. No. 57) at 4.

– 2 –

2008–09.[6] Years later, Plaintiffs acquired interests in the Lease, initiated government-mandated decommissioning operations in 2014, and turned to Tammany to share in the P&A expenses.[7]

When Tammany refused to pay, Plaintiffs filed this lawsuit against SCOA, PSIUSA, Sumitomo Corporation (which has neither been served nor appeared), and Prime; Plaintiffs have not named SGV as a defendant, and do not seek a declaratory judgment that SGV is liable for the P&A expenses.[8]

### ARGUMENTS AND AUTHORITIES

### A. Plaintiffs fail to establish any basis to hold SCOA and PSIUSA responsible under the Lease or Offshore Operating Agreement

Plaintiffs seek "partial summary judgment as to prior interest holders' continuing obligation to pay their share" of P&A expenses.[9] Plaintiffs argue in the Motion that when an interest holder in a lease "defaults on its decommissioning obligations," as Tammany has done here, "the remaining owners—both current and prior—become liable for the obligations attributable to the defaulting party."[10] Plaintiffs also argue that the Offshore Operating Agreement "unambiguously calls for prior interest holders to bear necessary P&A expenses."[11] The fatal flaw in Plaintiffs' Motion is that it is undisputed that **SCOA and PSIUSA were never**

---

[6]   SCOA's and PSIUSA's Mot. for Summary Judgm't (Doc. No. 56) at 3.

[7]   *See* Plaintiffs' Decommissioning MPSJ (Doc. No. 57) at 4.

[8]   *See generally* Second Am. Compl. (Doc. No. 32).

[9]   Plaintiffs' Decommissioning MPSJ (Doc. No. 57) at 10.

[10]   *Id.* at 5.

[11]   *Id.* at 8.

EMF_US 76536166v1

**interest holders** under the Lease. Nor were they parties to the Offshore Operating Agreement. Only SGV and Prime were interest holders and parties to the Agreement.

"It goes without saying that a contract cannot bind a nonparty." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002); *see B-G & G Inv'rs VI, L.L.C. v. Thibaut HG Corp.*, 985 So. 2d 837, 842 (La. App. 4th Cir. 2008) ("[I]t is obvious that an individual cannot be liable for breach of a contract to which he is not a party."); *Ohle v. Uhalt*, 213 So. 3d 1, 11 (La. App. 4th Cir. 2017) (same); *D & S Marine Transp., LLC v. S & K Marine, LLC*, No. CIV.A. 14-2048, 2015 WL 419800, at *3 (E.D. La. Jan. 30, 2015) ("A person cannot be held liable for breaching a contract to which it is not a party.").[12]

There are exceptions to the rule. "'Traditional principles' of state law allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (citing 21 R. Lord, WILLISTON ON CONTRACTS § 57:19, p. 183 (4th ed. 2001)).

In a single sentence in the "Summary" section of their Motion, Plaintiffs assert that SCOA and PSIUSA "are responsible for the liabilities of SGV" under the Lease and Offshore Operating Agreement.[13] However, Plaintiffs do not offer any argument, much less evidence, whatsoever in support of holding SCOA and

---

[12] Plaintiffs acknowledge that "Louisiana law is the appropriate state law to apply in this case." Plaintiffs' Decommissioning MPSJ (Doc. No. 57) at 5.

[13] *Id.* at 3.

– 4 –

PSIUSA responsible for SGV's alleged liabilities. Plaintiffs do not even move for summary judgment on the issue—again, they move only for judgment "as to **prior interest holders'** continuing obligation to pay their share" of P&A expenses.[14]

As a matter of law, therefore, the Court must "respect the corporate separateness of each entity involved here." *KeyBank Nat'l Ass'n v. Perkins Rowe Assocs., LLC*, No. 09-497-JJB, 2012 WL 13001442, at *9 (M.D. La. Feb. 9, 2012) ("KeyBank has inexplicably declined to seek summary judgment on its alter ego allegations . . . . Absent a convincing showing in that regard, the Court must respect the corporate separateness of each entity involved here."); *Riggins v. Dixie Shoring Co., Inc.*, 590 So.2d 1164, 1168 (La. 1991) ("Because of the beneficial role of the corporate concept, the limited liability attendant to corporate ownership should be disregarded only in exceptional circumstances. Moreover, if the plaintiffs do not allege shareholder fraud, they bear a heavy burden of proving that the shareholders disregarded the corporate entity to such an extent that it ceased to become distinguishable from themselves.").

Whether SGV is the alter ego of SCOA and PSIUSA (and it is not) is a decision that "must await another day." *KeyBank*, 2012 WL 13001442, at *9. Because SCOA and PSIUSA are not prior interest holders in the Lease, Plaintiffs' Motion must be denied.

## B.   SGV is not liable for the P&A expenses under the Lease or Offshore Operating Agreement

As Plaintiffs' Motion does not provide any basis to disregard SGV's fundamental corporate protections and hold SCOA and PSIUSA responsible for

---

[14]   Plaintiffs' Decommissioning MPSJ (Doc. No. 57) at 10 (emphasis added).

SGV's obligations, the Court need not even reach the question of whether SGV is actually liable for the P&A expenses as a prior interest holder.

Indeed, it is doubtful that the Court can answer this question given that Plaintiffs have elected not to seek a declaration of SGV's alleged liability for the P&A expenses in this lawsuit. *See* Second Am. Compl. (Doc. No. 32); *KeyBank*, 2012 WL 13001442, at *5–6 (recognizing that a request for relief involving a determination of the liability of an absent party implicates concerns about redressability, a "key prerequisite to the exercise of federal judicial power").[15]

A contracting party is "the paradigm of an indispensable party." *Corsi v. Eagle Publ'g, Inc.*, No. 1:07-CV-02004ESH, 2008 WL 239581, at *4 (D.D.C. Jan. 30, 2008) (citation omitted); *see Carnero v. Boston Scientific Corp.,* 433 F.3d 1, 18-19 (1st Cir. 2006) (holding that subsidiary was indispensable where it was a signatory to the agreement and allegedly breached the contract); *Rivera Rojas v. Loewen Group Int'l, Inc.,* 178 F.R.D. 356, 362 (D. P.R.1998) (finding that subsidiary was a necessary party in a suit against a parent where it "has an interest in the litigation of these issues which pertain to contracts to which [the subsidiary] is a party . . . [and][i]t should be afforded the opportunity to defend against these allegations."). In contrast, the prior interest holders were named defendants in all of the cases on which Plaintiffs rely in the Motion.[16]

---

[15] Unlike here, the plaintiff's motion in *KeyBank* cut "with a scalpel, not a chainsaw." 2012 WL 13001442, at *6. The motion did not involve a determination of the rights of the absent party, nor did it "seek a veil-piercing analysis" of the absent party. *Id.* Rather, it sought to clarify only the obligations of named defendants, which "arose and remain[ed] effective, if at all, independently of any actions or omissions on the part of" the absent party. *Id.*

[16] *See Sojitz Energy Venture, Inc. v. Union Oil Co. of Cal.*, __ F. Supp. 3d __, No. CV H-17-2941, 2019 WL 3451003, at *1 (S.D. Tex. Apr. 29, 2019); *Total E&P USA, Inc. v. Marubeni Oil & Gas (USA), Inc.,* __ F. Supp. 3d __, No. CV H-16-2671, 2018 WL 8997499, at *3 (S.D. Tex. Aug.

Nonetheless, assuming the Court can decide SGV's contractual liabilities in SGV's absence, there is no basis to grant summary judgment holding that SGV would be liable for unpaid P&A expenses were it still in existence. Section 8.6 of the Offshore Operating Agreement expressly addresses "Unpaid Charges," and provides that the "Participating Parties" are responsible for unpaid amounts in proportion to their interest:

> *Unpaid Charges*. If any Party fails to pay the charges due hereunder, including billings due under Section 8.3, within sixty (60) days after payment is due, **the Participating Parties shall**, upon Operator's request, **pay** the unpaid amount in proportion to their interest. Each Party so paying its share of the unpaid amount shall be subrogated to Operator's security rights to the extent of such payment.[17]

A "Participating Party" is a Party "who joins in an operation conducted pursuant to this Agreement."[18] Section 8.6 says that the Participating Parties are required to cover the defaulting party's costs "in proportion to their interest." At the time Tammany failed to pay the P&A expenses—years after SGV sold all of its interest in the Lease to Tammany—SGV had no interest. Accordingly, SGV was **not** a Participating Party and so is not obligated to share in the P&A expenses.

Notably, none of the cases on which Plaintiffs rely in the Motion involved a provision similar to Section 8.6 and Plaintiffs fail to mention Section 8.6 in their

---

24, 2018); *Chieftain Int'l (U.S.), Inc. v. Se. Offshore, Inc.*, 553 F.3d 817, 818 (5th Cir. 2008); *GOM Shelf, LLC v. Sun Operating Ltd. P'ship*, No. 4:06-CV-3444, 2008 WL 901482, at *2–3 (S.D. Tex. Mar. 31, 2008).

[17] Plaintiffs' Decommissioning MPSJ at Exhibit A (Doc. No. 57-1), § 8.6 (emphasis added).

[18] *Id.* at § 2.20.

EMF_US 76536166v1

Motion. Instead, they argue that SGV is liable for P&A expenses under Section 14.5 of the Offshore Operating Agreement, entitled "Abandonment Operations Required by Governmental Authority." But Section 14.5 simply states that the costs of a government-mandated abandonment shall "be shared by the Parties _**owning**_ such well or Platform in proportion to their Participating Interest":

> _Abandonment Operations Required by Governmental Authority_. Any well abandonment or Platform removal required by governmental authority shall be accomplished by Operator with the costs, risks, and net proceeds, if any, to be shared by the Parties owning such well or Platform in proportion to their Participating Interest.[19]

As Plaintiffs' corporate representative conceded during his deposition, Section 14.5 is in the present tense.[20] Section 14.5 is thus consistent with Section 8.6—only a Party "_**owning**_" a well at the time of a government-ordered abandonment is required to share in the costs of the abandonment operation. _See Clovelly Oil Co., LLC v. Midstates Petroleum Co., LLC_, 112 So. 3d 187, 194 (La. 2013) (holding that present tense language limited agreement "to presently-owned leases" at the time of contracting); _Gibson & Assocs., Inc. v. State, Dept. of Transp. & Dev._, 68 So. 3d 1128, 1138 (La. App. 1st Cir. 2011) (recognizing that "the term 'contracting entity' connotes present tense" and rejecting party's "strained and convoluted

---

[19] Plaintiffs' Decommissioning MPSJ at Exhibit A (Doc. No. 57-1), § 14.5.

[20] SCOA's and PSIUSA's Mot. for Summary Judg'mt (Doc. No. 56) at Exhibit 16, pp. 122–23 ("Q. 'With the cost, risk, and net proceeds, if any, to be shared by the parties owning such well or platform.' Now, owning, that's present tense, right? MR. GANNAWAY: Object to form and scope. A. Is 'owning' a present-tense word? Yes. Q. (BY MR. MORFEY) If it was past tense, it would be parties who own or owned, right? MR. GANNAWAY: Object to form and scope. A. Yeah, I mean — yes.").

EMF_US 76536166v1

interpretation" that would interpret the phrase as applying to entities that had contracted in the past).

Plaintiffs themselves recognized in their motion for summary judgment against Prime (Doc. No. 35) that the Offshore Operating Agreement limits liability for unpaid P&A expenses to present owners. Plaintiffs expressly represented to the Court that "[w]hen an owner—such as Tammany—defaults on its decommissioning obligations, *the remaining owners*—such as Prime and Plaintiffs—become liable for the obligations attributable to the defaulting party."[21] In the same motion, Plaintiffs admitted that SGV was *not* an owner when Tammany defaulted on its obligations:[22]

> The operating rights interests in the Lease were owned in the following percentages:



Plaintiffs argue that federal regulations distribute a defaulting party's remaining liabilities between current and prior interest holders.[23] However, the

---

[21] Plaintiffs' Mot. for Partial Summary Judgm't as to Prime Offshore, LLC's Release Defense ("Plaintiffs' Release MPSJ") (Doc. 35) at 7.

[22] *Id.* at 3–4.

[23] *See id.* at 5–6.

"regulations govern the parties' joint and several liabilities vis-à-vis the Government, not amongst themselves." *Fruge ex rel. Fruge v. Parker Drilling Co.*, 337 F.3d 558, 563 (5th Cir. 2003). Parties are free to "pars[e] out the obligations differently among themselves by contract." *Id.*[24] Here, the parties chose in Section 14.5 to parse out the obligation to pay P&A expenses for government-mandated abandonments to only those parties "owning" the wells at the time. *See supra.* They also chose in Section 8.6 to parse out the obligations in the event of nonpayment by a Participating Party to only the other Participating Parties at the time of the failure to pay.

SGV was not one of the parties "owning" an interest when the government ordered abandonment, or a Participating Party at the time of Tammany's failure to pay.  Plaintiffs have therefore failed to meet their summary judgment burden to show that SGV would be liable for P&A expenses under the Lease and Offshore Operating Agreement.

### CONCLUSION

SCOA and PSIUSA are not, and never have been, interest holders under the Lease or parties to the Offshore Operating Agreement. And Plaintiffs do not move for summary judgment on the alter ego or veil piercing allegations in their Complaint. The Court thus cannot enter summary judgment that SCOA and PSIUSA are liable for the decommissioning obligations. Nor can the Court enter summary judgment that SGV—a nonparty—is liable for the obligations.

---

[24] *See also* 62 Fed. Reg. 27,948-01 (May 22, 1997) ("While this rule determines who is liable to MMS for performance of nonmonetary obligations, it is not our intention that this rule preclude private agreements concerning the allocation of liabilities between and among the affected parties."); 60 Fed. Reg. 63,011-01 (Dec. 8, 1995) ("[I]t is not MMS's intention that these rules govern the relationship or liabilities between and among the affected parties other than MMS.").

EMF_US 76536166v1

For these reasons, the Court should deny Plaintiffs' motion for partial summary judgment against SCOA and PSIUSA.

Respectfully submitted,

By: */s/ Michael D. Morfey*
 Michael D. Morfey
 Attorney-in-Charge
 State Bar No. 24007704
 Federal I.D. No. 23842
 *michaelmorfey@HuntonAK.com*
 HUNTON ANDREWS KURTH LLP
 600 Travis, Suite 4200
 Houston, Texas 77002
 (713) 220-4163
 (713) 220-4285 (Fax)

ATTORNEYS FOR DEFENDANT SUMITOMO CORPORATION OF AMERICAS

OF COUNSEL:
M. Kaylan Dunn
State Bar No. 24076359
Federal I.D. No. 1171046
*kaylandunn@HuntonAK.com*
HUNTON ANDREWS KURTH LLP
600 Travis, Suite 4200
Houston, Texas 77002
(713) 220-4127
(713) 220-4285 (Fax)

– 11 –

## CERTIFICATE OF SERVICE

I hereby certify that on October 4, 2019, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the Court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Michael D. Morfey*
Michael D. Morfey

– 12 –