UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FIELDWOOD ENERGY OFFSHORE LLC, FIELDWOOD ENERGY LLC, and CASTEX OFFSHORE INC., | § § § § | |
| *Plaintiffs*, | § § § | |
| v. | § § | C.A. NO. 4:18-CV-03218 |
| PRIME OFFSHORE LLC and SUMITOMO CORPORATION OF AMERICAS, | § § § § § § | |
| *Defendants*. | § | |

**PRIME OFFSHORE LLC'S COMBINED RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT REGARDING CONTINUING DECOMMISSIONING OBLIGATIONS AND AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO PRIME OFFSHORE LLC'S RELEASE DEFENSE**

Plaintiffs seek to recover from Prime Offshore LLC ("Prime") decommissioning costs related to Breton Sound 41 Lease, OCS-G 21142 (the "Lease"). The parties' relationship was governed by the Offshore Operating Agreement, effective January 1, 2002 (the "OOA") under which Prime held an interest in the Lease until Prime relinquished that interest and was released on October 15, 2014, by the Plaintiffs, Tammany Oil & Gas LLC ("Tammany"), under the Release and Settlement Agreement (the "RSA").

897928.1

Now, years after Prime relinquished its interest and was released, Plaintiffs seek to recover decommissioning costs related to the Lease. Plaintiffs argue that they are not seeking Prime's previous share of the expenses, but a portion of Tammany's share, who defaulted on its obligations beginning in 2015. Plaintiffs have moved for summary judgment on Plaintiffs' affirmative claim that Prime breached the OOA as to Prime's allegedly continued decommissioning obligations and to dismiss Prime's affirmative defense of release.

The Court should deny these motions.

- Prime's liability to Plaintiffs regarding decommissioning expenses is governed by the OOA and the RSA, not any federal regulations.

- Prime is no longer liable for decommissioning expenses because it no longer has an interest in the Lease. And under the OOA, Prime cannot be liable for Tammany's share of decommissioning expenses—the relevant provision of the OOA requires that the Tammany's defaulted costs be shared among Plaintiffs, the current interest holders.

- Under the RSA and the OOA, Prime has been released.

## LEGAL STANDARD

In deciding a motion for summary judgment, the court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is a genuine issue as to any

897928.1

material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery, and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Little*, 37 F.3d at 1075 (quoting *Celotex*, 477 U.S. at 322).

## ARGUMENT

**1. Plaintiffs have not shown that they are entitled to summary judgment.**

Plaintiffs moved for summary judgment as to "Defendants' decommissioning obligation." Pls.' Mot. at 1, ECF No. 57. To succeed on their motion, Plaintiffs must show that there is no genuine issue of material fact. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). And as the party with the burden on this issue, Plaintiffs must establish all elements of their claim to warrant summary judgment in their favor. *Id.* ("Thus, if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor.").

Here, Plaintiffs have not made such a showing. Plaintiffs' motion does not conclusively establish that there no genuine issues as to any material facts for each element of their claims. The motion also fails to even say what the elements of Plaintiffs' claim are; nor, does it clarify whether Plaintiffs are seeking relief on their breach of contract claim or their purported claim under the Outer Continental Shelf Lands Act. At most, Plaintiffs' motion asks the Court to construe part of a contract.

Because Plaintiffs' motion is unclear about what precisely Plaintiffs seek summary judgment on and how Plaintiffs have established each element of any of their claims, Plaintiffs are not entitled to summary judgment.

Furthermore, as Prime as explained, it has no continued decommissioning obligations and incorporates by reference its Amended Response to Plaintiffs' Partial Motion for Summary Judgment and Cross Motion for Summary Judgment ECF No. 50) and all exhibits, which further explain why Prime has no more obligations.

**2. Prime has no continuing decommissioning obligations to cover Tammany's defaulted expenses under the OOA.**

On the topic of distributing liability for plugging and abandonment expenses for offshore wells, the Fifth Circuit is perfectly clear: "The regulations govern the parties' joint and several liabilities vis-à-vis the Government, not amongst themselves." *Fruge ex rel. Fruge v. Parker Drilling Co.*, 337 F.3d 558, 563–64

4

(5th Cir. 2003). Despite this, Plaintiffs cite to government regulation 30 C.F.R. § 556.604 and argue that this regulation governs the Parties' obligations amongst themselves. Plaintiffs' theory of continued decommissioning liability as to Prime is flawed for several reasons. First, it misreads the Offshore Operating Agreement (the "OOA")—the controlling contract that governs the relationship among the Parties as interest owners in the Lease. Second, Plaintiffs' theory expands liability under the OOA to make Prime liable for further obligations than exist under Section 14.5 of the OOA. Third, the cases cited by Plaintiffs are not applicable to Prime.

      a.    **The OOA applies only to Participating Parties.**

Section 14.5 of the OOA states, "Any well abandonment or Platform removal required by governmental authority shall be accomplished by Operator with the costs, risks, and net proceeds, if any, to be shared by the Parties owning such well or Platform in proportion to their Participating Interest."

The OOA defines "Participating Party" as "A Party who *joins* in an operation conducted pursuant to this Agreement." Ex. 2 (OOA at § 2.20) (emphasis added). At the time of the operations underlying Plaintiffs' lawsuit, Prime was not joining in those operations.

Prime signed the RSA on October 15, 2014. Since that time, Prime has had no further interest in the Lease. The plugging, abandonment, and decommissioning

5

expenses, which Plaintiffs now seek to recover from Prime, were incurred after October 2015 when Prime relinquished its interest. Ex. 1 (RSA). Thus, at the time these expenses were incurred, Prime did not own any interest in the well, nor was it a Participating Party. Only Plaintiffs and Tammany were. Accordingly, Section 14.5 of the OOA does not apply to Prime. And even if Section 14.5 did apply to Prime, Prime's current Participating Interest would be 0%, which under Section 14.5 would make its share of the expenses be zero.

      **b.**    **Prime cannot be liable for Tammany's share of expenses.**

Section 14.5 of the OOA does require parties to the OOA to cover the expenses for defaulting parties like Tammany. The obligation to cover for unpaid expenses by a defaulting party is governed by Section 8.6 of the OOA. That section says,

> If any Party fails to pay the charges due hereunder, including billings under Section 8.3, within sixty (60) days after payment is due, the Participating Parties shall, upon Operator's request, pay the unpaid amount in proportion to their interest. Each Party so paying its share of the unpaid amount shall be subrogated to Operator's security rights to the extent of such payment.

This is the relevant provision, and the one that Fieldwood first relied upon. *See* Ex. 3 (Letter from Fieldwood to Castex).

Thus, even if Prime did have continued obligations under Section 14.5 for decommissioning expenses, those obligations would not extend to cover cost

6

897928.1

sharing for Tammany's defaulted expenses. Section 14.5 only requires that Parties cover the costs according to their own Participating Interests.

"[P]arties will always be jointly and severally liable to the government for the cost of decommissioning, no matter what their contract provides, but they are free to reallocate the sharing of costs among themselves in their contract." *Sojitz Energy Venture, Inc. v. Union Oil Co. of California*, CV H-17-2941, 2019 WL 3451003, at *7 (S.D. Tex. Apr. 29, 2019). Here, the Parties agreed to allocate plugging, abandonment, and decommissioning costs under Section 14.5 with each party to be responsible in proportion to its own interest, and when a party defaulted on their obligations, the Parties agreed to allocate those costs according to Section 8.6.[1] Under the RSA, the Plaintiffs agreed that Prime's interest was zero.

Accordingly, even under Plaintiffs' theory, Prime would at most be liable to cover zero share of Tammany's defaulted costs.

### c. The cases cited by Plaintiffs do not apply to Prime.

In support of their continued-decommissioning theory, Plaintiffs cite several cases, but these are distinguishable as to Prime. *Nippon Oil Expl. U.S.A. Ltd. v. Murphy Expl. & Prod. Co. USA*, No. CIV.A. 10-2850, 2011 WL 2456358 (E.D. La. June 15, 2011); *Sojitz Energy Venture, Inc. v. Union Oil Co. of Cal.*, No. 4:17-CV-2941, 2019 WL 1310254 (S.D. Tex. Jan. 17, 2019); *Total E&P USA, Inc. v.*

---

[1] Prime has not, and could not, accrue any obligations under Section 8.6 to cover Tammany's defaulted expenses. *See* Prime's MSJ at § V(B)(3), ECF No. 50.

7

897928.1

*Marubeni Oil & Gas (USA), Inc.*, No. 4:16-CV-2671, 2018 WL 4599842 (S.D. Tex. June 28, 2018).

In those cases, the operators were attempting to recover expenses from former interest holders who had never covered their own share of decommissioning expenses. Thus, the cases do not support the notion that Plaintiffs can recover from Prime any portion of Tammany's expenses. Prime, via the RSA, has covered all of its past and future obligations regarding the Lease's decommissioning obligations. When Prime executed the RSA and relinquished its interest, it fully satisfied all of its obligations—past, current, and future—under Section 14.5 to cover its own share of the decommissioning obligations based on its pre-relinquishment Participating Interest.

The defendants in the cases cited by Plaintiffs had each assigned their interests without first paying their share of decommissioning expenses. This is a key distinction. In those cases, what the courts were not doing was holding the defendants jointly and severally liable for all decommissioning expenses. What the courts were doing was making those defendants cover their portions of already accrued decommissioning expenses that those defendants had accrued under the terms of the relevant operating agreements.

Plaintiffs here seek to do an entirely different task here. Plaintiffs do not seek to make Prime pay its share of the decommissioning expenses—which Prime

has already paid. Instead, Plaintiffs seek to hold Prime jointly and severally liable for all of Tammany's share of decommissioning expenses. No case cited by Plaintiffs supports that.

Prior to the RSA, Tammany had a 35% interest in the facilities and wells B002, B004, and B005, and a 42.4242% interest in the B003, B006, and B007 wells. After the RSA, in which Prime relinquished its interest, Tammany then had a 40% interest in the facilities and wells B002, B004, and B005, and a 50% interest in the B003, B006, and B007 wells. This means that only a 5% or 7.5%, respectively, portion of Tammany's interests are even attributable to Prime. Neither the OOA nor the cited cases support now making Prime jointly and severally liable with Plaintiffs for all of Tammany's expenses.

### d. Section 15.1 governs Prime's assignment, not Section 26.3.

Plaintiffs argue that Section 26.3 of the OOA does not contain a release, but that is not the relevant provision of the OOA. Under Section 15.1, a party can withdraw from the OOA, by giving notice and assigning its interests to the remaining parties. That is what happened here. Prime paid its "pro rata share of the estimated costs of plugging and abandoning all wells and removal of all Platforms, structures and other equipment on the Lease," including all "Future Obligations" under the RSA. Prime then assigned its interests on a pro rata basis to the remaining parties, which released Prime for those Future Obligations under the

9

RSA. Ex. 1. Thus, Section 15.1 is the assignment provision that applies to Prime's relinquishment of its interests and Prime withdrew from the Lease.

That provision relieves the withdrawing party from all responsibilities with respect to the Lease. *See* OOA, at § 15.1.  And under that section, Prime is only liable for "any costs, expenses, or damages theretofore accrued or arising out of any event occurring prior to such Party's withdrawal."  *Id.* Thus, contrary to Plaintiffs' argument that the assignment provision does not contain a release, Prime withdrew pursuant to Section 15.1 and was released.

**3.     Prime has been released from all decommissioning liabilities.**

Prime incorporates by reference its Amended Response to Plaintiffs' Partial Motion for Summary Judgment and Cross Motion for Summary Judgment ECF No. 50) and all exhibits. That motion explains why Plaintiffs' Motion for Summary Judgment on Prime's affirmative defense of release should be denied. Prime has been released from any decommissioning obligations related to the Lease. Furthermore, as explained above, when Prime relinquished its interests, it withdrew from the OOA, and was released from liability under Section 15.1.

## CONCLUSION

For the above reasons, the Court should deny Plaintiffs' motions.

Respectfully submitted,

**SMYSER KAPLAN & VESELKA, L.L.P.**

*/s/ Larry R. Veselka*
Larry R. Veselka
Attorney-in-Charge
State Bar No. 20555400
Fed. Bar No. 6797
Austin Kreitz
State Bar No. 24102044
Fed Bar No. 3292473
717 Texas Avenue, Suite 2800
Houston, Texas 77002-2761
Telephone: (713) 221-2300
Facsimile: (713) 221-2320
lveselka@skv.com
akreitz@skv.com

**ATTORNEYS FOR DEFENDANT PRIME OFFSHORE LLC**

**CERTIFICATE OF SERVICE**

    I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this filing via the Court's CM/ECF system on October 4, 2019.

                                      */s/ Larry R. Veselka*
                                      Larry R. Veselka