UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FIELDWOOD ENERGY OFFSHORE LLC, § | | |
| FIELDWOOD ENERGY LLC, § | | |
| -and- § | | |
| CASTEX OFFSHORE INC., § | | |
| § | | |
| Plaintiffs, § | | |
| § | | |
| v. § | CIVIL ACTION NO. | |
| § | 4:18-CV-03218 | |
| PRIME OFFSHORE LLC, § | | |
| SUMITOMO CORPORATION § | | |
| OF AMERICAS, § | | |
| SUMITOMO CORPORATION, § | | |
| -and- § | | |
| SUMMIT SHALE INTERNATIONAL § | JURY TRIAL DEMANDED | |
| CORPORATION, § | | |
| § | | |
| Defendants. § | | |

**PLAINTIFFS' COMBINED REPLY TO
ALL DEFENDANTS' RESPONSES RELATED TO PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT
REGARDING CONTINUING DECOMMISSIONING OBLIGATIONS**

TO THE HONORABLE JUDGE PETER BRAY:

    Pending is Plaintiffs' motion regarding decommissioning liability (Doc. No. 57).  Prime and SCOA/SUSHI have responded separately (with Doc. Nos. 64 and 60, respectively).  Plaintiffs submit this combined reply to address both filings.

1

**Argument and Authorities**

1. **Plaintiffs Are Entitled to Summary Judgment on the Limited Issues Raised.**

Prime posits in its response (Doc. No. 64) that Plaintiffs' Motion is "unclear about what precisely Plaintiffs seek summary judgment on." For its part, SCOA says that, because the Motion does not itself prove alter ego or SBE, "the Court need not even reach the question of whether SGV is actually liable for the P&A expenses as a prior interest holder." Doc. No. 60, pp. 5-6. Both of these statements miss the point. Plaintiffs explained that the Motion did not address the release defense or veil-piercing issues, but instead was limited as follows:

> [This Motion] seeks summary judgment *only on the issue of prior interest owners' continuing decommissioning liability*. Of course, Plaintiffs must prove their alter ego claim at trial and overcome the release defense in order to show final liability. Plaintiffs merely seek summary judgment that decommissioning obligations held by prior interest holders survive assignment and continue to run in the absence of express release.

Motion (Doc. No. 57), p. 4-5 n.1 (emphasis added). Plaintiffs are well aware they must prove that SCOA and SUSHI/PSIUSA are liable for SGV's debts, and that they must overcome Prime's release defense to finally prevail in this case. The pending Motion seeks only to affirm what the OOA and the law relevant under OCSLA make clear: that prior owners like Prime and SGV remain liable for decommissioning costs.

2

Plaintiffs made explicit in their Motion what they sought: a partial summary judgment that "Defendants' liability for P&A costs—under the controlling Operating Agreement, under the RSA, under Texas law, under Louisiana law, and under federal regulations—remains even after the interests are assigned." Doc. No. 57, p. 10.

Despite what SCOA suggests on page 5 of its Response, there was no need for a declaratory judgment regarding SGV's liability – Plaintiffs have alleged that SGV had liabilities under the OOA, and that SCOA and SUSHI are responsible for those liabilities because they are each "effectively a party to the Agreement." Second Amended Complaint, ¶ 57. This is so because SCOA and SUSHI are responsible for the liabilities of SGV under the alter-ego and SBE doctrines. Second Amended Complaint, ¶ 12.

The motion regarding decommissioning obligations (applicable to all Defendants in this case) does not seek a finding of *final* liability by litigating the respective alter ego and release questions; instead, it seeks a determination that liabilities for decommissioning costs survive assignment of interests. *See* Motion (Doc. No. 57), p. 4 n.1. The motion regarding release (applicable only to Prime) seeks a finding that Prime was never released from its obligations running to Tammany's interests. The evidence offered for both demonstrates Plaintiffs are entitled to partial summary judgment.

## 2. Prior Owners' Decommissioning Obligations With Respect to Tammany's Share Remain.

The parties have already submitted multiple briefs regarding the fact that a prior owner of a well remains liable for decommissioning costs that are paid after the prior owner assigns its interest. Plaintiffs recently responded to the Defendants summary judgments on these issues. Doc. Nos. 68 & 69.

The Defendants both point to Section 8.6 and Section 14.5 of the OOA in an attempt to claim they are not liable as prior interest owners. Section 8.6 says that when a party fails to pay a charge, then the other participating parties shall pay the unpaid amount in proportion to their interest. Doc. No. 60, p. 7. Section 14.5 says that the parties are to share costs of well abandonment or platform removal in proportion to their participating interest. Doc. No. 60, p. 8.

Both sets of Defendants point out that Section 8.6 and Section 14.5 both refer to *current* participating parties paying at in proportion to their interest, and argue that they are absolved from any liability as *prior* owners (or, for SCOA, as a party responsible for prior owners' obligations). Doc. No. 60, p. 7 (for 8.6, "At the time Tammany failed to pay the P&A expenses—years after SGV sold all of its interest in the Lease to Tammany—SGV had no interest."); Doc. No. 64, p. 6 ("[A]t the time these expenses were incurred, Prime did not own any interest in the well, nor was it a Participating Party."); Doc. No. 60, p. 8 ("Section 14.5 is thus consistent with Section 8.6—only a Party 'owning' a well at the time of a government-ordered

4

abandonment is required to share in the costs of the abandonment operation."); Doc. No. 64, p. 7 n.1 ("Prime has not, and could not, accrue any obligations under Section 8.6 to cover Tammany's defaulted expenses.")

The arguments regarding both of these OOA sections is the same: Defendants say you should not be able to hold ***prior*** owners liable because the contractual language refers to holding ***present*** owners liable. As Plaintiffs have already explained on pages 3-6 of Doc. No. 68 (incorporated herein by reference), these arguments fail. Just today, SCOA claimed that Section 8.6 is somehow different from Section 14.5 because it specifically references "unpaid charges." Doc. No. 71, p. 5. But Sections 8.6 and 14.5 both on their face give rise to obligations under the contract to current parties. And, as the Fifth Circuit has explained, Louisiana law holds former parties responsible as if they were current parties to a contract even after they assign their interests. *Chieftain Intern. (U.S.), Inc. v. Se. Offshore, Inc.*, 553 F.3d 817, 819 (5th Cir. 2008) ("Louisiana law provides that an assignee and assignor remain solidarily liable with regard to the assignor's obligations to a third party unless the third party releases the assignor."). Whether the Court looks to Section 8.6 or Section 14.5, the Defendants have not obtained a release of their obligations under either provision for the decommissioning obligations that accrued while they were owners.

3. **Prime's Has No Support for the Argument that the Law is "Distinguishable as to Prime."**

Prime says in its Response that the law is "distinguishable as to Prime" and that Plaintiffs cannot recover from Prime "any portion of Tammany's expenses." Doc. No. 64, pp. 7-8. Prime's theory here is unclear, as it cites no authority for this part of its brief (other than saying that Plaintiffs' authorities had different facts). As already explained, the OOA (including Sections 8.6 and 14.5) do give rise to liability for the other owners when one of them defaults – and, until released, prior owners retain that liability.

4. **Prime's Argument Regarding Section 15.1 is Unavailing.**

Finally, Prime latches onto Section 15.1 of the OOA ("Withdrawal") as its provision under which it assigned its interest and was purportedly released. Section 15.1 reads in relevant part:

> 15.1 *Withdrawal*.  Any Party may withdraw from this Agreement and thereby be relieved of all responsibilities with respect to the Lease by giving notice to the other Parties of such desire together with an offer to convey at no cost by a recordable instrument, without warranty, express or implied, except for its own acts, all of its interest in and to the Lease, the oil and gas, and the property and equipment owned hereunder. . . . Thereafter, the withdrawing Party shall assign its entire interest ratably to the remaining Parties

Prime offers no evidence that it followed the withdrawal procedure set forth in Section 15.1, nor does it cite any case suggesting that the language of this provision would constitute a release that could overcome its obligations as a prior interest owner. It asserts that it "assigned its interests on a pro rata basis to the

remaining parties," Doc. No. 64, p. 9, but a review of the before-and-after interests that the remaining parties had as a result of the RSA (as described on pages 1-3 of the RSA) do not support the notion that the interests were in fact distributed "pro rata" (or "ratably," to use the language of Section 15.1). But, perhaps most importantly, Prime's suggestion that the RSA accomplished a "withdrawal" under 15.1 that released it from all liability still runs headlong into the most glaring problem with Prime's argument: it ignores Section 6 of the RSA, which limits the scope of Prime's release, as described more fully in the following section. However Prime might interpret Section 15.1, it subsequently agreed in the RSA that it would remain responsible for other obligations it incurred as "owners of the Assets and/or pursuant to the Lease and/or the JOA."

### 5. The RSA Is Narrowly Drafted and Excludes Tammany's Portion.

The RSA does not expressly release Prime from its liability for Tammany's defaulted amounts.

Prime makes only one real argument to explain its "release" from Tammany's share of liability (aside from arguing there is no liability): that Section 3 of the RSA, which releases Prime from "costs and expenses for Prime's proportionate share of the Obligations for the Assets," somehow also applies to release Prime from any liability associated with *Tammany's* share. By its plain language, it does not. It would have been easy enough in Section 3 to write that Prime was released from

7

"costs and expenses for *all* obligations for the Assets," but instead the parties used the limiting phrase "Prime's proportionate share" of the obligations. It is used in the definitions to the RSA, in the releasing language, and—importantly—in the language that makes explicit that Prime retained liability. Section 6 reads:

> Notwithstanding anything to the contrary set forth herein, the Releasing Party's release and assumption of the Obligations shall ***only apply to Prime's interest*** in the Assets. Except as specifically set forth herein, the Releasing Parties and Prime shall remain liable and responsible for all ***other*** obligations and liabilities incurred as owners of the Assets and/or pursuant to the Lease and/or the JOA.

(emphasis added). Prime has never been released from its obligations associated with the interests of the assignees. The liability survives. The parties were free to contract otherwise. They chose not to.

## Conclusion

Decommissioning obligations for prior owners survive assignment absent an express release contemplating otherwise. Prime's settlement agreement expressly *excludes* release of liabilities not associated with its own proportionate share. Plaintiffs request this Court grant both its motions for partial summary judgment and grant any other relief to which it finds Plaintiffs justly entitled.

Respectfully submitted,

**BECK │ REDDEN LLP**

By: */s/ Geoff A. Gannaway*
　　Geoff A. Gannaway
　　Texas State Bar No. 24036617
　　Federal I.D. No. 37039
　　ggannaway@beckredden.com
1221 McKinney St., Suite 4500
Houston, Texas 77010-2010
Telephone: (713) 951-3700
Facsimile: (713) 951-3720

**ATTORNEY-IN-CHARGE FOR PLAINTIFFS FIELDWOOD ENERGY OFFSHORE LLC, FIELDWOOD ENERGY LLC, AND CASTEX OFFSHORE INC.**

Alex B. Roberts
Texas State Bar No. 24056216
Hannah L. Roblyer
Texas State Bar No. 24106356
Beck Redden LLP
1221 McKinney, Suite 4500
Houston, Texas 77010-2010
Telephone: (713) 951-3700
Facsimile: (713) 951-3720

**OF COUNSEL FOR PLAINTIFFS FIELDWOOD ENERGY OFFSHORE LLC, FIELDWOOD ENERGY LLC, AND CASTEX OFFSHORE INC.**

9

## **CERTIFICATE OF SERVICE**

I hereby certify that I caused a true and correct copy of the foregoing instrument to be served on the following counsel of record in accordance with the Federal Rules of Civil Procedure on this 11th day of October 2019, by electronic mail:

Counsel for Defendant
Prime Offshore LLC:
Larry R. Veselka
lveselka@skv.com
Austin R. Kreitz
akreitz@skv.com
Smyser Kaplan & Veselka, L.L.P.
700 Louisiana, Suite 2300
Houston, Texas 77002

Counsel for Defendants
Sumitomo Corporation of Americas and
Summit Shale International Corporation:
Michael D. Morfey
michaelmorfey@HuntonAK.com
M. Kaylan Dunn
kaylandunn@HuntonAK.com
Hunton Andrews Kurth LLP
600 Travis, Suite 4200
Houston, Texas  77002

              */s/ Geoff A. Gannaway*